HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETER SINES,

   Plaintiff,

  v.

BELLINGHAM COLD STORAGE CO., LLC,

   Defendant.

CASE NO. C12-2227RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion from Defendant Bellingham Cold Storage Co., LLC ("BCS") for summary judgment. No party requested oral argument; the court finds oral argument unnecessary. For the reasons stated herein, the court GRANTS the motion in part and DENIES it in part. Dkt. # 13. The court sets May 6, 2014 as the date for a bench trial and April 10, 2014 as the deadline for submission of motions in limine.

## II. BACKGROUND

Because the court considers this dispute on BCS's motion for summary judgment, it summarizes the evidence by resolving all disputed facts in favor of the Plaintiff, Peter Sines. In doing so, the court does not suggest an opinion on who would prevail on those disputes of fact at trial.

ORDER – 1

Peter Sines came to work at BCS in August 2010 as a dock clerk in the "fish house" portion of a large warehouse facility. The fish house processed fish orders for delivery.

Almost immediately after he began working at BCS, Mr. Sines had unwelcome interactions with Eduardo Fajardo, a co-worker who operated a forklift in the fish house. Within a week, Mr. Fajardo pulled down the front part of his pants, exposing at least his pubic hair, and said, in essence, "hey, Peter, I got something for you." Sines Depo.[1] at 121, 125. He repeated that gesture at least a dozen times in 2010. Sines Depo. at 125. On five or more occasions, Mr. Fajardo pointed at Mr. Sines and moved his head in a simulation of oral sex. Sines Depo. at 120-121, 123. On one occasion, Mr. Fajardo put Mr. Sines's hands on the area of Mr. Fajardo's pants covering his genitals and asked to "borrow [his] hand" for the purpose of masturbating. Sines Depo. at 121, 129; Sines Decl. (Dkt. # 21) ¶ 4. Mr. Fajardo also extended his middle finger at Mr. Sines hundreds of times in 2010. Sines Depo. at 123.

Mr. Sines contends that he complained to his supervisor, Mike Coggins, several times in 2010 about Mr. Fajardo's sexual harassment. Sines Decl. ¶ 4. With one exception, he offers no specific evidence about the timing of those complaints, and he does not differentiate them from complaints that he made about Mr. Fajardo's work performance. The court must infer that Mr. Coggins was aware of at least some friction between the two men, because he admits that he moved Mr. Fajardo to work in another part of the BCS facility to keep him separated from Mr. Sines. Coggins Decl. (Dkt. # 16) ¶ 4. It is plain, however, that Mr. Sines made complaints about Mr. Fajardo other than the complaints of sexual conduct. That, plus Mr. Sines's admission that he did not report Mr. Fajardo's simulations of oral sex until he reported the incident where Mr. Fajardo placed Mr. Sines's hands on his crotch, suggest that his complaints of *sexual* misconduct

---

[1] The court relies on excerpts of Mr. Sines's deposition attached as Exhibit 1 to the declaration of Michael Griffin. Dkt. # 14.

ORDER – 2

came later, perhaps as late as November 2010.  Sines Depo. at 123 ("[The simulations of oral sex] had gone on for a while before I reported that to Mike Coggins when [Mr. Fajardo] sexually assaulted me and I was fed up enough.").

In late November 2010, a series of complaints that had arisen while Mr. Coggins was away from the BCS facility led Mr. Coggins to contact BCS human resources manager Sheryl Hershey for the first time.  Coggins Decl. ¶ 5.  Mr. Coggins contacted Ms. Hershey on November 22; she received a written complaint from Mr. Sines the following day.  Hershey Decl. (Dkt. # 15) ¶ 7.  Mr. Sines's written complaint (Hershey Decl., Ex. 4) described Mr. Fajardo's simulations of oral sex, his exposure of his genitals, and the incident where he placed Mr. Sines's hands on his crotch.  It did not specify when any of those incidents occurred.  It is clear from Mr. Sines's description (in the same complaint) of conflicts with Mr. Fajardo and other co-workers on November 19 and November 23 that none of the sexual incidents occurred on those dates.

Ms. Hershey began an investigation.  She interviewed Mr. Sines and fifteen other employees, including Mr. Fajardo.  Hershey Decl. ¶ 8.  She ultimately concluded that Mr. Fajardo had engaged in "unprofessional conduct" (*id.* ¶ 12) and concluded that he should be disciplined.  *Id.* ¶¶ 12-13.  She also believed that Mr. Sines should have been disciplined for some of his conduct, but Mr. Coggins convinced her otherwise.  *Id.* ¶ 14.  By the time Ms. Hershey concluded her investigation, both Mr. Fajardo and Mr. Sines had been laid off as part of a widespread seasonal reduction in BCS's workforce.  *Id.* ¶ 12.  When BCS recalled Mr. Fajardo to work in April 2011, Ms. Hershey suspended him for three days without pay and warned him that he would lose his job for any further misconduct.  *Id.* ¶ 13.

During the investigation, Mr. Sines reported to Mr. Coggins that an employee at "Home Port"[2] had "flipp[ed] [him] off and grabb[ed] his crotch."  Sines Depo. at 107.

---

[2] No one cites any portion of the record explaining what "Home Port" is.  From context, the court assumes that it is an employer affiliated with BCS and in close geographical proximity to BCS.

ORDER – 3

Mr. Coggins approached the employee and threatened to fire him. *Id.* at 107-08. The employee never gestured at Mr. Sines again. *Id.*

BCS recalled Mr. Sines to work in July 2011. Mr. Sines declares that when he returned, Mr. Coggins told him that he would have been recalled sooner but for his complaint of harassment. Sines Decl. ¶ 5; Griffin Decl. (Dkt. # 14), Ex. 6 ("[Coggins] told me that I would have been hired back sooner if I had not reported this sex stuff to the EEOC."). Mr. Coggins denies that he said as much, Griffin Decl., Ex. 8, but the court must accept Mr. Sines's version of events on summary judgment.

Mr. Coggins also told Mr. Sines upon his recall that if he had any further problems with his co-workers, he should report to him immediately and he would put a stop to it. Sines Depo. at 169-70 (Q: "[Mr. Coggins's] words were that if anybody messed with you he would come down on them with both feet, right?" A: "Yes, I believe so.").

Mr. Sines does not contend that Mr. Fajardo's sexual misconduct continued in 2011. Sines Depo. at 195-96. Instead, he contends that Mr. Fajardo became insubordinate, repeatedly extending his middle finger at him, telling him to "fuck off" whenever he asked for deliveries, and refusing to perform work. Sines Depo. at 195. Mr. Sines repeatedly asked Mr. Coggins to arrange for him not to work with Mr. Fajardo, but Mr. Coggins refused. Sines Decl. ¶ 9 ("[H]e would just shrug off my concerns and make fun of me. . . . It seemed that he had decided that I was a complainer and that he still believed that I was gay or that I had led [Mr. Fajardo] on.").

Mr. Sines contends that Mr. Coggins began to harass him after he returned to BCS in July 2011. According to him, Mr. Coggins approached him on fewer than ten occasions to rub his belly. Sines Depo. at 109-110. He would ask Mr. Sines "when [his] baby was due" or ask him "what [his] wife thinks of that under my shirt . . . ." Sines Depo. at 109. He also performed some "little gay gesture things," although there is no evidence that he targeted Mr. Sines with those gestures. *Id.* Although Mr. Sines was "somewhat" offended by Mr. Coggins' conduct, he neither complained to Mr. Coggins

ORDER – 4

1  nor reported his conduct to anyone else.  Sines Depo. at 118.  He admits that he
2  understood Mr. Coggins to be making fun of him because of his weight.  Sines Depo. at
3  167.

   On September 4, 2011, a temporary supervisor who has no other involvement in
4  the dispute underlying this lawsuit confronted Mr. Sines about several containers of fish
5  that had been incorrectly placed in the warehouse.  Griffin Decl., Ex. 7.  Mr. Sines ended
6  the confrontation by quitting his job.  *Id.*  Mr. Sines admits that he quit, but contends that
7  it was the culmination of stress resulting from the conduct of Mr. Fajardo and Mr.
8  Coggins that caused him to do so.  Sines Decl. ¶ 13 ("When I quit, I would have been
9  willing to return to work if BCS had really fixed the problem by moving me to a different
10 area or addressing the issues in my grievance.").

   After filing a complaint with the Equal Employment Opportunity Commission,
12 Mr. Sines received a right-to-sue letter.  He then sued BCS for sexual harassment, a
13 hostile work environment, and retaliation.  He invoked both the Washington Law Against
14 Discrimination ("WLAD") and Title VII of the Civil Rights Act of 1964.

   BCS has moved for summary judgment on all of Mr. Sines's claims.  The court
16 now considers its motion.

### III.  ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel*

ORDER – 5

*Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

**A.   Hostile Work Environment**

Although Mr. Sines purports to assert claims for both sexual harassment and hostile work environment, he makes no effort to explain the difference between those claims. Sexual harassment claims are typically either based on a hostile work environment or a so-called "quid pro quo" in which a supervisor demands sexual favors in return for a job benefit. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753-54 (1998) (discussing distinction between quid pro quo and hostile work environment). Mr. Sines neither alleges quid pro quo sexual harassment nor explains the distinction between his sexual harassment and hostile work environment claim. The court accordingly considers only his hostile work environment claim.

To establish a sexual hostile work environment via Title VII, a plaintiff must prove that he was subjected to verbal or physical harassment that was sexual in nature, that the harassment was unwelcome, and that the harassment was sufficiently severe or pervasive to alter the conditions of his employment. *Dawson v. Entek Int'l*, 630 F.3d 928, 937-38 (9th Cir. 2011). In a case where a supervisor is the harasser who created the hostile work environment, the employer is vicariously liable, although it may avoid liability by proving that it exercised reasonable care to prevent and correct harassment and that the plaintiff unreasonably failed to take advantage of preventative or corrective opportunities. *Id.* at 939; *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 877 (9th Cir. 2001); *Ellerth*, 524 U.S. at 765. In a case where a co-worker is the harasser who created the hostile work environment, the plaintiff bears the additional burden of proving that "the employer knew or should have known of the harassment but did not take adequate steps to address it." *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir.

ORDER – 6

2001); *see also Nichols*, 256 F.3d at 875 (describing employer's duty to both stop harassment and deter future harassment).

The WLAD imposes similar burdens for hostile work environment claims. A plaintiff must prove unwelcome harassment "because of sex," that it was severe enough to affect the terms or conditions of employment, and that it can be imputed to the employer. *Robel v. Roundup Corp.*, 59 P.3d 611, 616 (Wash. 2002) (quoting *Glasgow v. Georgia-Pac. Corp.*, 693 P.2d 708, 712 (Wash. 1985). Except where the owner, manager, officer, or partner of an employer participates in the harassment, the employee must show that the employer knew or should have known of the harassment and failed to take reasonable corrective action. *Glasgow*, 693 P.2d at 712. Given the similarity between the WLAD and Title VII as it applies to hostile work environment claims, the court will not separately analyze Mr. Sines's claims invoking each statute.

### 1. 2010 Harassment

The court begins by considering the hostile work environment that allegedly existed during Mr. Sines's 2010 term of employment. During that period, he alleges harassment only from Mr. Fajardo.

At the threshold, BCS insists that it cannot be liable for the same-sex harassment at issue here, because it is not harassment because of sex or gender. BCS concedes, as it must, that there is no categorical bar against sexual harassment claims where the harasser and victim are of the same gender. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998) ("[S]ex discrimination consisting of same-sex sexual harassment is actionable under Title VII."). It focuses, however, on three same-sex harassment scenarios that the *Oncale* Court mentioned. *Id.* at 80 (mentioning harassment "motivated by sexual desire," harassment motivated by "general hostility to the presence of [members of one gender] in the workplace," and harassment directed solely at members of one gender, but not another"). What BCS ignores is that the *Oncale* Court did not purport to offer three *exclusive* pathways to proving same-sex harassment. The Ninth

ORDER – 7

1 Circuit has acknowledged numerous species of same-sex harassment. In *Rene v. MGM Grand Hotel, Inc.*, for example, four judges of an en banc panel found it sufficient that the harassment be sexual in nature. 305 F.3d 1061, 1067 (9th Cir. 2002) (explaining that sexual touching in all-male workforce was harassment because of sex). Three concurring judges found that harassment based on gender stereotyping was actionable even in an all-male workplace. *Id.* at 1068 (noting that *Nichols* also held harassment based on gender stereotypes to be harassment).

Here, the evidence would permit a finder of fact to conclude that Mr. Fajardo mimicked oral sex on Mr. Sines, exposed his genitals, and forcibly placed Mr. Sines's hand on his crotch. In the Ninth Circuit, that is harassment because of sex. *See Rene*, 305 F.3d 1067 (concluding that "a man who was repeatedly grabbed in the crotch and poked in the anus, and who was singled out from his other male co-workers for this treatment" was a victim of "precisely what Title VII forbids: 'discriminat[ion] . . . because of . . . sex'") (internal quotation to 42 U.S.C. § 2000e-2(a)(1)).

Although BCS urges the court to rule that Mr. Fajardo's harassment was, as a matter of law, not sufficiently severe or pervasive to alter the conditions of Mr. Sines's employment, the court declines to reach that issue. Rather than offering an answer for the difficult question of whether Mr. Fajardo's conduct crossed the line between repugnant-but-lawful conduct and conduct severe and pervasive enough to constitute a hostile environment, the court turns instead to Mr. Sines's burden to show that BCS's response to the harassment was inadequate.

Because Mr. Fajardo was a co-worker, Mr. Sines bears the burden of proving that management either knew or should have known of the harassment and failed to take reasonable corrective or preventative measures. No one disputes that Mr. Sines reported the harassment to Mr. Coggins on November 22 or shortly before and to Ms. Hershey on November 23. The court cannot discount Mr. Sines's evidence that he also reported harassment to Mr. Coggins sooner, but it also cannot overlook that there is no evidence at

ORDER – 8

all about the timing of those earlier reports. To prevail, he would have to prove that at a he reported *sexual* harassment (as opposed to non-actionable forms of harassment or other workplace complaints) to Mr. Coggins. He would then have to prove that Mr. Coggins did not respond adequately to his reports. On this record, he cannot do so as a matter of law. There is no evidence that Mr. Sines reported *sexual* harassment, as opposed to harassment arising from workplace disputes with Mr. Fajardo and his colleagues, prior to his late November complaints. Even if the court could ignore that evidentiary shortcoming, it could not ignore that there is no evidence that Mr. Coggins failed to respond appropriately. Mr. Sines admits that Mr. Coggins ensured that Mr. Fajardo worked in another area of the BCS facility. He also admits that Mr. Coggins immediately put an end to harassment from the "Home Port" employee. If Mr. Coggins's response was inadequate to remedy the sexual hostile work environment, Mr. Sines offers no evidence that would permit a finder of fact to reach that conclusion.

Once Mr. Sines made his November 22 and 23 reports, BCS responded adequately as a matter of law. There is no evidence that Mr. Fajardo's sexual harassment continued after those reports. BCS investigated the incident and disciplined Mr. Fajardo when he returned to work the following year. Mr. Sines feels that the three-day suspension Mr. Fajardo received was a mere slap on the wrist, but what he cannot dispute is that he has no evidence that the sexual harassment continued after the three-day suspension. Instead, his evidence shows that Mr. Fajardo was rude and insubordinate after that suspension. Rudeness and insubordination, however, are not sexual harassment. On this record, no finder of fact could conclude that BCS's response to Mr. Sines's report was inadequate. BCS is entitled to judgment as a matter of law as to Mr. Sines's sexual hostile work environment claim based on Mr. Fajardo's conduct in 2010.

### 2. 2011 Harassment

Turning to 2011, the court need not consider Mr. Fajardo's conduct – Mr. Sines admits that there was no further harassment of a sexual nature from him. Mr. Sines

ORDER – 9

complains that Mr. Coggins did not grant his requests to have Mr. Fajardo work elsewhere. But neither Title VII nor the WLAD requires an employer to separate a harasser from his victim, they merely require an employer to end the unlawful harassment. On this record, BCS did so as a matter of law.

Instead, the court must consider, and reject, Mr. Sines's claim that Mr. Coggins sexually harassed him in 2011. That claim, which is based on fewer than ten incidents in which Mr. Coggins rubbed Mr. Sines's belly and unspecified incidents in which Mr. Coggins performed "little gay gesture things," cannot stand. Mr. Sines admits that he understood Mr. Coggins to be mocking his weight when he rubbed his belly. That is not a claim of sexual harassment. Mr. Sines's complaints regarding "little gay gesture things" do not even establish that the gestures were aimed at him, much less that they constituted actionable sexual harassment. Finally, Mr. Sines admits that he did not report Mr. Coggins's harassment, and he offers no evidence that Mr. Coggins's superiors at BCS should have known about it otherwise. For all of these reasons, the court grants summary judgment against Mr. Sines's sexual hostile work environment claim based on conduct in 2011.

**B. Retaliation**

Both Title VII and the WLAD prevent employers from retaliating against their employees for engaging in protected activity. 42 U.S.C.§ 2000e-3(a) (prohibiting discrimination against an employee because he "has opposed any practice made an unlawful employment practice by this subchapter"); RCW § 49.60.210(1) ("It is an unfair practice for any employer . . . to . . . discriminate against any person because he or she has opposed any practices forbidden by this chapter . . . .").

There is no dispute that Mr. Sines's complaint of sexual harassment was a protected activity. A finder of fact could believe Mr. Sines's testimony that Mr. Coggins admitted that he would have recalled Mr. Sines to BCS sooner in 2011 if Mr. Sines had

ORDER – 10

not made the harassment complaint. For that reason, the court cannot enter summary judgment against Mr. Sines's retaliation claim.

### IV. CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part BCS's motion for summary judgment. Dkt. # 13. The sole claim remaining in this action is Mr. Sines's retaliation claim.

The bench trial in this matter will begin on May 6, 2014. The parties shall file motions in limine in accordance with Local Rules W.D. Wash. LCR 7(d)(4) no later than April 10, 2014 and to note them for consideration no later than April 25. The court directs the clerk to issue a scheduling order with additional pretrial deadlines.

Dated this 28th day of March, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 11